Louis G. Close, III, Esquire
Louis G. Close, III, LLC
403 Central Avenue
Towson, Maryland 21204

RE: Administrative Tort Claim of Veronica Y. McCall-Scovens

Dear Mr. Close:

This is my report acknowledging that after a review of the history, medical records, and other pertinent materials involved in the above-referenced matter, I have concluded that there have been violations of the standards of care on the part of the Defendants, Christina Boyd, M.D., May Blanchard, M.D., Monique Spencer, M.D., Vadim Morozov, M.D., and Lindsay Appel, M.D., individually and as agents and/or employees of the Defendant United States of America, which have directly and proximately resulted in injuries and damages to the Plaintiff, Veronica Y. McCall-Scovens.

In October of 2010, the Plaintiff Veronica Y. McCall-Scovens was a 52-year-old postmenopausal woman with an FSH of 106.3, and familial history of cancer, who presented to the Veterans Administration ("VA") Medical Center in Baltimore, Maryland with complaints of abnormal bleeding. On October 26, 2010, a diagnostic pelvic ultrasound identified a concerning right ovarian cyst. Follow-up sonography performed in December 2010, May 2011 and August 2011 revealed persistent growth and evolution of this right ovarian cystic mass.

In December of 2011, the Plaintiff returned to the VA Medical Center for a follow-up pelvic ultrasound. This diagnostic study identified an expanding right ovary measuring 3.8 x 3.1 x 3.8 cm; a cystic lesion at the margin of the right ovary that had increased in size, now measuring 2.8 x 2.6 x 3.8 cm (previously 1.4 x 1.8 x 2.8 cm in October 2010 and 1.7 x 1.6 x 1.9 cm in August 2011); a new 11 mm mural nodule demonstrating internal vascularity at the margin of the cystic lesion; and a newly developed right hydrosalpinx. It was further noted that the above findings were suspicious for an ovarian/adnexal neoplasm with clinical evaluation for possible surgical resection recommended.

Shortly thereafter, on January 17, 2012, the Plaintiff was seen by Defendant Christina Boyd, M.D. As of this time, in light of the Plaintiff's history, clinical signs and symptoms, and sonographic findings, the Defendant Boyd knew or should have known that the Plaintiff's adnexal mass was suspicious for malignancy. The applicable standards of care required that the Plaintiff be advised of the need for immediate surgical removal, and that extirpation be performed as of this time, and the suspicious mass surgically removed. Instead, the Defendant negligently advised the Plaintiff that she had the option of "watchful waiting," with repeat ultrasounds, instead of surgical intervention. This negligent conduct is attributable to the Defendant Blanchard as well, who was acting as a senior attending, and who saw and discussed the Plaintiff and her condition as of that

PLAINTIFF'S EXHIBIT 8

1

time. Had the Defendants Boyd and/or Blanchard complied with the standards of care, and advised of the need for immediate surgical removal, and such surgical treatment provided, the Plaintiff's ovarian cancer would have been diagnosed at an early stage and treated, such that the Plaintiff would have enjoyed an overwhelming chance of long-term, cancer-free cure. Unfortunately, the Plaintiff's cancer was negligently permitted to remain, grow and spread, without timely diagnosis and treatment.

In February 2012, the Defendant May Blanchard, M.D. was again made aware of the December 2011 ultrasound. As of this time, in light of the Plaintiff's history, clinical signs and symptoms, and sonographic findings, the Defendant Blanchard knew or should have known that the Plaintiff's adnexal mass was suspicious for malignancy and required immediate surgical removal as of that time. The applicable standards of care required that the Plaintiff be advised of the need for immediate surgical removal, and that extirpation be performed and the suspicious mass removed. Instead, the Defendant negligently advised the Plaintiff that she had the option of watchful waiting, with repeat ultrasounds, instead of surgical intervention. Had the Defendant Blanchard complied with the standards of care, and advised Plaintiff of the need for immediate surgical removal, and surgical treatment provided, the Plaintiff's ovarian cancer would have been diagnosed at an early stage and treated, such that the Plaintiff would have enjoyed an overwhelming chance of long-term, cancer-free cure. Unfortunately, the Plaintiff's cancer was negligently permitted to remain, grow and spread, without timely diagnosis and treatment.

The Plaintiff returned to the VA Medical Center in February, 2012 where a pelvic ultrasound again identified an enlarged right ovary now measuring 5.7 x 6.0 x 3.8 cm; a persistent right ovarian cystic mass; and a prominent tubular structure in the right adnexal region extending to the right ovary. As of this time, the Plaintiff, who was postmenopausal as of that time, came under the care of the Defendants Monique Spencer, M.D. and Vadim Morozov, M.D. Both of these Defendants negligently failed to advise the Plaintiff of the need for immediate surgical removal, and perform surgery for removal of the suspicious mass, as the standards of care required. Instead, these Defendants negligently advised the Plaintiff that she had the option of continued monitoring, with repeat ultrasounds, instead of surgical intervention. As the result, the Plaintiff's ovarian cancer continued to remain and grow, without proper diagnosis and treatment.

In April 2012, the Plaintiff underwent laboratory testing, including a CA-125 tumor marker study. This CA-125 study, commonly utilized by health care providers to evaluate a patient's risk for ovarian cancer, was determined to be elevated and abnormal, with a value of 49 u/ml. In May 2012, the Plaintiff was seen by the Defendants Lindsay Appel, M.D. and Defendant Morozov, M.D. Given the Plaintiff's history, as well as her clinical, diagnostic imaging and laboratory findings as of this time, the standards of care required the Defendants Appel and Morozov to advise the Plaintiff of the need for immediate surgical removal, and perform surgery for removal of the suspicious mass, and diagnose and treat the Plaintiff's ovarian cancer as of that time. Unfortunately, Defendants Appel and Morozov in violation of the standards of care, failed to do so; instead, these Defendants negligently advised the Plaintiff that she had the option of

2

continued monitoring, with repeat ultrasounds, instead of surgical intervention. As the result, the Plaintiff's ovarian cancer continued to remain and grow, without proper diagnosis and treatment.

In June 2012, the Plaintiff presented to the VA Medical Center with the sudden onset of 10/10 lower abdominal pain. A CAT scan of the Plaintiff's abdomen and pelvis identified thickening of the sigmoid colon, a 5 x 9 cm structure in the right adnexal region with soft tissue and cystic components, and free fluid in the pelvis. Unfortunately, in violation of the standards of care, the Defendants Lindsay Appel, M.D. and Vadim Morozov, M.D. as of this time, again failed to advise the Plaintiff of the need for immediate surgical removal, and perform such surgery for removal of the suspicious mass. Instead, the Defendant negligently advised the Plaintiff that she had the option of continued monitoring, with repeat ultrasounds, instead of surgical intervention. As the result, the Plaintiff's ovarian cancer continued to remain and grow, without proper diagnosis and treatment.

On January 18, 2013, the Plaintiff underwent additional repeat diagnostic evaluation of her pelvic region, after which, it was noted that the previously identified right adnexal mass had significantly increased in size and now measured 6.4 x 5.7 x 5.8 cm. Findings also included a large complex cystic tubular structure along the margin of the right adnexal mass measuring 9.7 x 2.6 x 5.1 cm. A repeat CA-125 test conducted at this time was again determined to be abnormal, and significantly elevated, with a value of 115 u/ml. At this time, for the first time, the Defendant Morozov finally and belatedly, complied with the standards of care, and advised the Plaintiff of the need for immediate surgical removal, and referred the Plaintiff to a gyn oncologist for surgical removal of the suspicious masses seen on ultrasound.

On February 20, 2013, the Plaintiff Veronica McCall-Scovens finally and belatedly underwent surgical intervention to diagnose and treat her cancerous condition. Unfortunately, due to the breaches in the standards of care, as outlined above, and the resulting delay in diagnosing and treating the Plaintiff's condition, the cancer was allowed to grow, spread and metastasize, such that she required extensive surgical intervention, including an open total abdominal hysterectomy; bilateral salpingo-oophorectomy; pelvic and periaortic lymph node dissection; omentectomy; small bowel resection with side-to-side anastomosis; rectosigmoid resection with end-to-end anastomosis; appendectomy; and tumor debulking. The pathological tissue diagnosis at this time confirmed, for the first time, the presence of cancer. The primary tumor was identified as a high-grade serous carcinoma with the presence of invasive tumor implantation involving the right fallopian tube, peritoneum, small intestine, sigmoid/rectum and periappendiceal tissue - - indicating that the Plaintiff now had Stage IIIC serous carcinoma. At this time, the Plaintiff Veronica McCall-Scovens' cancer was at an advanced stage, and as a result, she now has a very poor prognosis.

Postoperatively to the February 20, 2013 surgery, the Plaintiff developed several complications including an anastomotic leak which required numerous repair efforts including an exploratory laparotomy on March 4, 2013, abdominal washout procedures

3

on March 6th, 8th, 11th, 15th, 19th, 22nd, and April 3rd, ostomy placement, and staged closure of the Plaintiff's abdominal wound. Further, on April 6, 2013, the Plaintiff required transfer to the University of Maryland Medical Center for additional treatment and care, including additional surgical repair efforts, medical management and wound care. Had the diagnosis been made in accordance with the standards of care by any of these Defendants, and timely and appropriate treatment provided, the Plaintiff would not have been required to undergo, among other things, the extensive surgery of February 13th, including bowel resection, and would not have suffered the negative sequelae that resulted therefrom.

In January 2016, the Plaintiff suffered with a recurrence of her ovarian cancer; she required additional surgery and is presently receiving chemotherapy treatment.

Had the standards of care been complied with by the Defendants Christina Boyd, M.D., May Blanchard, M.D., Monique Spencer, M.D., Vadim Morozov, M.D. and Lindsay Appel, M.D., the Plaintiff's ovarian cancer would have been diagnosed at an early stage, and treatment provided, such that the Plaintiff would have enjoyed an overwhelming chance of long-term cancer-free cure. Because of the breaches in the standard of care as outlined above, the Plaintiff's cancer was negligently allowed to grow, and metastasize without treatment, such that as of July/August, 2012, the Plaintiff's prognosis for cure, even assuming diagnosis and treatment, was below fifty percent as of that time.

The Plaintiff now, given her recurrence, has a very poor prognosis and is certain to suffer with further recurrence of the cancer, succumb to this disease, and die, likely within the next 24 months. She will also require additional treatment and care, including ultimately, palliative care, for such.

All of my opinions are expressed to a reasonable degree of medical certainty. I specifically reserve the right to modify, amend, and/or supplement my opinions as further information about this case is made available to me.

Very truly yours,

James F. Barter, M.D.

4